**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

BURLEIGH HOUSE CONDOMINIUM
ASSOCIATION, INC.,

    Plaintiff,

v.

ROCKHILL INSURANCE COMPANY, LIBERTY SURPLUS INSURANCE CORPORATION, HALLMARK SPECIALTY INSURANCE COMPANY, UNDERWRITERS AT LLOYD'S OF LONDON, FIRST SPECIALTY INSURANCE CORP., EVANSTON INSURANCE COMPANY, AND COLONY INSURANCE COMPANY,

    Defendants.

CASE NO.: 1:21-cv-22911-RNS

_____/

**FIRST SPECIALTY INSURANCE CORPORATION'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendant, First Specialty Insurance Corporation ("First Specialty"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), moves to dismiss Plaintiff's Amended Complaint [DE 18]:

**I.**  **Summary**

This matter arises out of Plaintiff's first party insurance claim for alleged Hurricane Irma property damage. Plaintiff asserts damages of $13,844,406.26 while First Specialty's participation is limited to providing coverage in excess of $25,000,000.00. The subject policy further contains a mandatory forum selection clause for New York. Both issues require First Specialty to be dismissed from the Amended Complaint with prejudice.

1

## II. Facts

### A. Amended Complaint

Plaintiff owns the Insured Location located in Miami-Dade County, Florida. *See* DE 18 at ¶ 12. Plaintiff purchased a commercial property insurance policy from participating Defendants. *Id.* The participating insurers – including primary and excess insurers – are identified as follows:

**Schedule of Participation / Underlying Insurers**

[All Risk Including Flood & Earthquake, Excluding CA EQ]

| Layer | Insurance Company | Limit | Policy # |
|---|---|---|---|
| $10M Primary | See Schedule of Primary Carriers | | |
| | | $ 10,000,000 | |
| $15M xs $10M A/R INCL FL & EQ | Liberty Surplus Insurance Corp. | $ 15,000,000 | 1000125847-03 |
| | | $ 15,000,000 | |
| $25M xs $25M A/R INCL FL & EQ | Hallmark Specialty Insurance Company / Lloyds of London Novae 2007 Syndicate | $ 5,000,000 | 93PRX-16EDCB / 73PRX16EDCA |
| | First Specialty Insurance Corp. | $ 12,500,000 | ESP2002046 00 |
| | Evanston Insurance Company | $ 5,000,000 | MKLV11XP005271 |
| | Colony Insurance Company | $ 2,500,000 | XP263866 |
| | | $ 25,000,000 | |
| $25M xs $50M A/R INCL FL & EQ | Colony Insurance Company | $ 7,500,000 | XP263866 |
| | Evanston Insurance Company | $ 5,000,000 | MKLV11XP005271 |
| | First Specialty Insurance Corp. | $ 12,500,000 | ESP2002046 00 |
| | | $ 25,000,000 | |
| $25M xs $75M A/R INCL FL & EQ | Liberty Surplus Insurance Corp. | $ 25,000,000 | 1000238406-01 |
| | | $ 25,000,000 | |
| $150M xs $100M A/R INCL FL & EQ, EXCL FL SFHA, EXCL WA EQ | Lexington Insurance Co. | $ 112,500,000 | 061628735/00 |
| | Scottsdale Insurance Company | $ 37,500,000 | AJS0000461 |
| | | $ 150,000,000 | |
| $250M xs $250M A/R EXCL FL & EQ | Lexington Insurance Co. | $ 112,500,000 | 061628735/00 |
| | Homeland Insurance Co. of New York | $ 50,000,000 | 795005378 |
| | United National Insurance Company | $ 25,000,000 | LP000846 |
| | Scottsdale Insurance Company | $ 62,500,000 | AJS0000461 |
| | | $ 250,000,000 | |
| $300M xs $500M A/R EXCL FL & EQ | RSUI Indemnity | $ 150,000,000 | NHD398666 |
| | Mitsui Sumitomo Insurance Co. of America | $ 100,000,000 | EXP7000413 |
| | Lexington Insurance Co. | $ 50,000,000 | 061628735/00 |
| | | $ 300,000,000 | |
| $200M xs $800M A/R EXCL FL & EQ | RSUI Indemnity | $ 200,000,000 | NHD398667 |
| | | $ 200,000,000 | |

2

*See* p. 11, First Specialty's Excess Policy, policy number ESP2002046 00, attached as "**Exhibit A**."[1]

### B. First Specialty's Policy

First Specialty's obligations to Plaintiff are limited to the terms, conditions, limitations, exclusions and endorsements of the Policies referenced in the Market Security Appendix to the Lead Policy. Moreover, as an excess insurer, First Specialty benefits from the underlying insurance coverage which come into effect at its attachment point. First Specialty's first attachment point is $25 million excess of $25 million. Plaintiff's claimed damages are only $13,844,406.26 at replacement cost value. DE 18, ¶ 28, *see also*, DE 18-2.

First Specialty's policy also contains a forum selection clause, requiring the following:

**Applicable Law; Court Jurisdiction**

The laws of the State of New York, without regard to any conflict of laws rules that would cause the application of the laws of any other jurisdiction, shall govern the construction, effect, and interpretation of this insurance agreement.

The parties irrevocably submit to the exclusive jurisdiction of the Courts of the State of New York and to the extent permitted by law the parties expressly waive all rights to challenge or otherwise limit such jurisdiction.

Special Terms and Conditions Endorsement, Form SP 6 208 0413. "**Exhibit A**," p. 12 of 21. New York is therefore the proper forum as the New York courts have exclusive jurisdiction over this dispute.

### III. Legal Standard

To survive dismissal under Fed. R. Civ. P. 12(b)(6), a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[1] First Specialty's policy is identified by the primary policy. [DE 18-1; p. 51 of 53]. Courts can consider documents outside of the complaint that are central to the Plaintiff's claims. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005); *Chisholm Properties S. Beach, Inc. v. Arch Specialty Ins. Co.*, 21-CV-22960, 2022 WL 356452, at *3 (S.D. Fla. Feb. 7, 2022).

544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In applying the Supreme Court's directives in *Twombly* and *Iqbal*, the Eleventh Circuit has provided the following guidance to the district courts:

> In considering a motion to dismiss, a court should 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Further, courts may infer from the factual allegations in the complaint obvious alternative explanation[s], which suggest lawful conduct rather than the unlawful conduct the plaintiff would like to infer.

*Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 Fed. Appx. 136, 138 (11th Cir. 2011) (citations omitted).

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F. 3d 1282, 1284 (11th Cir. 2008). The district court must also consider "the facts derived from a complaint's exhibits as part of the plaintiff's basic factual averments," and where those exhibits control. *See F.TC. v. AbbVie Prods. LLC*, 713 F. 3d 54, 63 (11th Cir. 2013).

Interpreting an insurance policy is a question of law. *Pac. Emp'rs Ins. Co. v. Wausau Bus. Ins. Co.*, 2007 WL 2900452, at *4 (M.D. Fla. Oct. 2, 2007), citing *Graber v. Clarendon Nat'l Ins. Co.*, 819 So. 2d 840, 842 (Fla. 4th DCA 2002)); *Lissauer v. GuideOne Specialty Mut. Ins.*, 76 N.Y.S.3d 216, 218-19 (N.Y. App. Div. 2d Dept. 2018). If the language of an insurance policy is clear and unambiguous, courts must enforce it as written and according to its terms. *Chisholm Properties South Beach, Inc. v. Arch Specialty Insurance Company*, 21-CV-22960, 2022 WL 356452, at *5 (S.D. Fla. Feb. 7, 2022)(quoting *Washington Nat. Ins. Corp. v. Ruderman*, 117 So.3d

943, 948 (Fla. 2013); *City of New York v. Philadelphia Indem. Ins. Co.*, 864 N.Y.S.2d 454, 455-56 (N.Y. App. Div. 2d Dept. 2008).

IV. **Argument**

    A. **Plaintiff's claims do not enter First Specialty's layer and must be dismissed.[2]**

Plaintiff seeks $13,844,406.26 at replacement cost value. Plaintiff's claim against First Specialty, an excess insurer whose coverage begins after $25 million, must be dismissed because Plaintiff fails to plead that its loss enters that layer. "Primary coverage" exists where, under the terms of the policy, liability attaches immediately upon the happening of the occurrence that gives rise to liability. *See Privilege Underwriters Reciprocal Exch. v. Hanover Ins. Group*, 304 F. Supp. 3d 1300, 1308 (S.D. Fla. 2018), citing to *St. Paul Fire & Marine Ins. Co. v. Lexington Ins. Co.*, No. 05-80230-CIV, 2006 WL 1295408, at *4 (S.D. Fla. Apr. 4, 2006). Excess insurance, on the other hand, "exists where, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted." *Id*. Accordingly, an "excess insurance policy does not to come into effect unless and until the amount of damages exhausts the limits of the primary policy." *See Conley v. Fla. Fam. Ins. Co.*, 2010 WL 3385353, at *3 (N.D. Fla. Aug. 26, 2010); *St. Vincent's Hosp. & Med. Ctr. V. Ins. Co. of N.A.*, 457 N.Y.S.2d 670, 672 (N.Y. Sup. Ct. 1982). Because Plaintiff has not alleged coverage that enters First Specialty's layer, Plaintiff's claims against First Specialty must be dismissed as a matter of law. *See, e.g., Zodiac Group, Inc. v. Axis Surplus Ins. Co.*, 542 Fed. Appx. 844, 2013 WL 5718439 (11th Cir. 2013)(holding that

---

[2] First Specialty's policy requires the Court to apply New York law. "**Exhibit A**," p. 12 of 21. First Specialty has not presently identified a conflict of law between Florida and New York. New York courts similarly require lower layers of insurance to be exhausted before an excess insurer could be liable. *Forest Laboratories, Inc. v. Arch Ins. Co.*, 984 N.Y.S.2d 361, 362 (N.Y. App. Div. 1st Dept. 2014); *Ambassador Associates v. Corcoran*, 541 N.Y.S.2d 715, 718 (N.Y. Sup. Ct. 1989); *In re Viking Pump, Inc.*, 52 N.E. 3d 1144, 1157-58 (N.Y. 2016), opinion after certified question answered, 148 A.3d 633 (Del. 2016); *JP Morgan Chase & Co. v. Indian Harbor Ins. Co.*, 947 N.Y.S.2d 17, 20-21 (N.Y. App. Div. 1st Dept. 2012). First Specialty reserves it right to assert New York law applies given the choice of law provision should a conflict of law issue arise.

district court properly granted insurer's motion to dismiss breach of contract and declaratory judgment claims because plain language of the policy precluded coverage for the underlying claim); *MJCM, Inc. v. Hartford Cas. Ins. Co.*, No. 8:09-CV-2275-T-17TBM, 2010 WL 1949585 (M.D. Fla. May 14, 2010)(granting motion to dismiss under Fed. R. Civ. P. 12(b)(6) on breach of contract claim because the underlying lawsuit was not covered under the insurance policy at issue).

Courts hold that failing to plead ultimate facts showing that excess coverage is triggered warrants dismissal. For example, in *Reesey v. Fed. Emerg. Mgt. Agency*, 13-60488-CIV, 2013 WL 12086662, at *3 (S.D. Fla. July 9, 2013), the Court, interpreting an insurance contract under Florida law, found that an excess policy was not triggered based on the allegations contained in the plaintiff's complaint. Because the excess policy was not exhausted under the facts alleged, the court dismissed plaintiff's breach of insurance contract claim against the excess insurer. *Id.*

The same outcome is warranted here: Plaintiff's allegations do not trigger the excess coverage provided by First Specialty. First Specialty can never be in breach, nor will declaratory relief regarding replacement cost value ever be meaningful. Until (and if) Plaintiff's losses trigger First Specialty's layer of coverage, there is no duty that First Specialty could have breached, including failing to pay the claim at replacement cost value. *See Id.*; *see also, Royal Hosp. Corp. v. Underwriters at Lloyd's*, No. 3:18-CV-000102, 2019 WL 4228490, at *4–5 (S.D. Fla. Aug. 20, 2019), *aff'd* 2019 WL 4225579 (S.D. Fla. Sept. 5, 2019)(granting dismissal of plaintiff's claims against an excess insurer where the "plain and unambiguous contractual language" provided that the excess layer was not triggered until the primary was exhausted, holding that the plaintiff "cannot file a case against the [e]xcess [c]arriers when there is no actual dispute between the parties in the hopes that one day in the not-so-distant future there might be a real, live case or controversy"). Plaintiff's counts against First Specialty must therefore be dismissed as a matter of

6

law.

### B. New York is the proper forum.

#### i. The forum selection clause requires exclusive jurisdiction in New York, and is therefore mandatory and must be enforced.

The determination of "whether the forum selection clause is valid and enforceable is a procedural issue to be determined in accordance with the law of the forum state rather than the law of the state designated in the agreement." *Golden Palm Hosp., Inc. v. Stearns Bank Nat. Ass'n*, 874 So. 2d 1231, 1234 (Fla. 5th DCA 2004); *Fendi S.r.l. v. Condotti Shops, Inc.*, 754 So. 2d 755, 758 (Fla. 3d DCA 2000). Accordingly, Florida law applies in determining "the validity and enforceability of [the] forum selection clause" at issue, "despite a choice of law provision in the agreement." *See Glovegold Shipping, Ltd. v. Sveriges Angfartygs Assurans Forening*, 791 So. 2d 4, 14 (Fla. 1st DCA 2000)("Florida procedural rules govern a determination of the validity of a forum selection clause.").

"Florida courts recognize a distinction between mandatory jurisdiction clauses in contracts which *require* that a particular forum be the exclusive jurisdiction for litigation . . . and permissive jurisdiction clauses which only provide that there *may* be jurisdiction over such litigation in a particular forum." *S & S Directional Boring And Cable Contractors, Inc. v. Am. Nat. Bank Of Minnesota*, 961 So. 2d 1046, 1047 (Fla. 2d DCA 2007)(quoting *Shoppes Ltd. P'ship v. Conn*, 829 So.2d 356, 357-58 (Fla. 5th DCA 2002))("emphasis supplied); *Antoniazzi v. Wardak*, 259 So.3d 206, 209 (Fla. 3d DCA 2018)("The general rule is that 'a forum selection clause will be considered permissive if it lacks words of exclusivity.' By contrast, 'a forum selection clause is mandatory where the plain language used by the parties indicates 'exclusivity.' A forum selection clause will be deemed mandatory where, by its terms, suit may be filed only in the forum named in the clause . . . .")(internal citations omitted); *Travel Exp. Inv. Inc. v. AT & T Corp.,* 14 So. 3d 1224, 1226

(Fla. 5th DCA 2009)("On the other hand, permissive forum selection clauses are essentially a 'consent' to jurisdiction or venue in the named forum and do not exclude jurisdiction or venue in another forum."); *Agile Assur. Group, Ltd. v. Palmer*, 147 So. 3d 1017, 1018 (Fla. 2d DCA 2014) (citing with approval the Fifth DCA's holding in *Travel Exp. Inv. Inc.* that "the term 'the exclusive jurisdiction' contains words of exclusivity" and renders a venue selection "mandatory, not permissive.").

Here, the clause at issue is indisputably mandatory and must be enforced. It expressly requires that the "exclusive jurisdiction" of the parties' disputes will be in New York, which under the above cases renders the clause mandatory. To that point, on August 31, 2017, Circuit Court Judge Rex Barbas addressed this precise issue in *iStar Inc., f/k/a iStar Financial Inc.; and Tampa Marina Investments, L.L.C., v. Allied World Assur. Co. (U.S.); First Specialty Ins. Corp., et. al.*, Case No.: 17-CA-1013, Circuit Court of the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida ("*iStar*"). A copy of this order is attached as "**Exhibit B**." In *iStar*, the insured sued First Specialty and three other co-insurers seeking first party property coverage. The forum selection clause there was identical to the one at issue before this Court.

First Specialty moved to dismiss the Complaint based on the contractually agreed-upon forum selection clause. Judge Barbas concluded that the forum selection clause was mandatory in nature and, thus, must be enforced. He dismissed all claims against First Specialty and ruled that: "the forum selection clause in Plaintiffs' and FSIC's [First Specialty] insurance contract selecting New York as the forum for any resulting litigation **is mandatory and enforceable as a negotiated term of the contract**." The court granted First Specialty's motion, leaving the insured to litigate against First Specialty in New York and against its three other co-insurers in Florida.

In fact, as set forth below, the U.S. Supreme Court and courts across Florida and New York

have held forum selection clauses substantially identical to the First Specialty forum selection clause at issue to be mandatory and enforceable.

### ii. The U.S. Supreme Court Enforces Such Forum Selection Clauses.

The U.S. Supreme Court has made it clear that forum selection clauses are enforceable. For example, in *Atlantic Marine Constr. Co., Inc. v. U.S. District Court for the Western District of Texas, et al.*, 571 U.S. 49, 134 S.Ct. 568 (2013), the Supreme Court held that a contractual forum selection clause should be enforced in "all but the most exceptional cases." *Id.* at *11, *citing Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). In *Atlantic Marine*, Atlantic and J-Crew Management, Inc. ("J-Crew") entered into a construction project for work on a military base in Texas. *Id.* at 573. The contract contained a forum selection clause calling for any litigation arising from the contract to be filed in the Circuit Court for the City of Norfolk, Virginia or the U.S. District Court for the Eastern District of Virginia. *Id.* Nevertheless, in breach of that provision, J-Crew filed suit in the Western District of Texas. *Id.* Atlantic Marine moved to have the case transferred to Eastern District of Virginia. *Id.* The federal district court, and subsequently the Fifth Circuit, after weighing a "nonexhaustive and nonexclusive list of public and private interest factors," concluded that the forum selection clause was only one of many factors to be considered when determining venue and that the convenience of the parties justified keeping the case in Texas. *Id.* at *5, *citing U.S. ex rel. J-Crew Mgmt., Inc. v. Atlantic Marine Constr. Co.,* No. A-12-CV-228-LY, 2012 WL 8499879, *5 (W.D. Tex. Aug. 6, 2012). Accordingly, both the District Court and the Fifth Circuit held that the litigation could continue in Texas despite the forum selection clause.

The U.S. Supreme Court reversed. Justice Alito, writing for the unanimous Court, explained "the procedure that is available for a defendant in a civil case who seeks to enforce a

forum selection clause." *Id.* at *4. The Court held that contractual forum selection clauses must be applied in all but the *most exceptional, unusual or uncommon cases* and that "private interest factors,"[3] such as inconvenience, should <u>*not*</u> *be considered* when a trial court evaluates a motion to transfer based on a contractual Forum Selection Clause. *Id.* at *12 (emphasis added). Justice Alito explained:

> When parties agree to a forum selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for pursuit of the litigation. A court accordingly must deem the private-interest factors to weight entirely in favor of the preselected forum. *Id.*

The Supreme Court chided the lower court for giving weight to J-Crew's claims of inconvenience. The Supreme Court pointed out that "when J-Crew entered into a contract to litigate in Virginia, it knew that a distant forum might hinder its ability to call certain witnesses and might impose other burdens on its litigation efforts." *Id.* at *14.

Further, while a court may consider "public interest factors," "those factors will rarely defeat a transfer motion." *Id.* at *12. The burden falls on the plaintiff to show that "public interest factors overwhelmingly disfavor a transfer" since "'the interest of justice' is served by holding parties to the bargain." *Id.* at *13 (emphasis added). The Supreme Court was critical of the District Court's rationale for denying transfer. The District Court had held that public-interest factors "weighed in favor of keeping the case in Texas because Texas contract law is more familiar to federal judges in Texas than to their federal colleagues in Virginia." *Id.* at *14. The Supreme Court rejected such reasoning and cheekily responded: "We are not aware of any exceptionally

---

[3] "Private Interest Factors" include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Atlantic Marine*, 2013 WL 6231157 at *12, n. 6, *citing Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

arcane features of Texas contract law that are likely to defy comprehension by a federal judge sitting in Virginia." *Id.*

### iii. Florida Courts Also Enforce Forum Selection Clauses.

Though inapplicable based on the unambiguous language of the forum clause, Florida federal and state courts have both held that the legitimate expectations of contracting parties must be recognized and "directed" that forum selection clauses be enforced.

In Florida, it is not enough for a party to claim that enforcement of the parties' forum selection clause would result in additional expense or *inconvenience. Manrique v. Fabbri*, 293 So. 2d 437, 440 n. 4 (Fla. 1986). Rather, it is "incumbent on the party seeking to escape his contract to *show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.*" *Id.* (quoting with *approval M/S Breman v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972))(emphasis supplied).

In *Manrique*, the Supreme Court of Florida considered whether a forum selection clause in favor of the laws of the Netherlands Antilles should be enforced to dismiss a Florida state court action. The clause stated that "[t]he laws of the Netherlands Antilles shall control in case of any such conflict or dispute between the parties to this agreement, who submit themselves to that jurisdiction." *Id.* at 438. The defendant moved to dismiss the action for lack of jurisdiction based on a forum selection clause, but the trial court denied the motion. On appeal, the Florida Supreme Court agreed with the U.S. Supreme Court and other courts holding that forum selection clauses are *prima facie* valid and should be enforced. *Id.* It reversed the lower court's dismissal and enforced the forum selection clause. *Id.* at 439.

In addition to the *iStar* and *Manrique* cases discussed above, other Florida cases ruling on virtually identical clauses have also held that they are enforceable as a matter of law. In *Am. Safety*

*Cas. Ins. Co. v. Mijares Holding Co., LLC*, 76 So. 3d 1089 (Fla. 3d DCA 2011), the insured, Mijares Holding, owned Bulk Express Transport, a specialty trucking services provider in Florida. Mijares Holding sued its two commercial auto carriers, American Safety and Odyssey American Reinsurance Corporation, sought reimbursement for a $1 million settlement of an underlying personal injury claim arising out of an accident involving a Bulk Express Transport vehicle. *Id.* at 1091.  American Safety, moved to dismiss the complaint, arguing that "Mijares specifically and expressly agreed that the Superior Court of Cobb County, Georgia 'shall have jurisdiction and venue' in determining the parties' respective rights and obligations under the agreement." The trial court denied the motion and American Safety appealed.  *Id.*

On appeal, the Third DCA acknowledged that "Florida courts have long recognized that '[f]orum selection clauses are presumptively valid.'" *Id*. The court found that the language of the forum selection clause was clear and unambiguous, stating: "The 2007–2008 policy states, 'the Named Insured . . . agrees that such court shall have jurisdiction and venue for the purposes of determining all rights and obligations under this agreement.'  This language is clear and unambiguous." *Id.* at 1092.  Moreover, the court rejected Mijares' argument that splitting the case between Odyssey in Florida and American Safety in Georgia would lead to inconsistent results.  It stated:

> While we agree that inconsistent and simultaneous interstate litigation is an applicable compelling reason, we do not agree it applies in this case to override Florida law's presumption in favor of enforcing forum selection clauses.  Mijares' arguments regarding the possible impractical or inconsistent litigation it may have to pursue against other defendants who need not litigate in Georgia, do not overcome the certainty that Mijares freely agreed to the mandatory forum selection clause as to its claims against American.  *Id.*

The court reversed the trial court's order and directed the trial court to dismiss American from the Florida action based on the mandatory forum selection clause in favor of Georgia.  The

Florida action remained as against Odyssey only.

In *Travel Exp. Inv. Inc. v. AT & T Corp.*, 14 So. 3d 1224, 1227 (Fla. 5th DCA 2009), the clause under review provided that "[t]he parties consent to the exclusive jurisdiction of the courts located in New York City, USA." The court observed that "[t]he clause . . . specifically provides that the parties consent to 'the exclusive jurisdiction' of the New York courts." Accordingly, it reasoned, "[t]his exclusivity provision clearly makes this clause unambiguous and mandatory." *Id.*; *see also, Antoniazzi v. Wardak*, 259 So.3d 206, 209 (Fla. 3rd DCA 2018)("Even in the absence of such "magic words," a forum selection clause may be deemed mandatory where the language used "does clearly indicate that it is mandatory in nature. . . . Here the forum selection clause provides: 'The place of performance, the *exclusive jurisdiction* for all legal action and the venue for legal proceedings . . . is the place . . .' (emphasis added). Thus, the plain language of this contract expresses an unmistakable intent to make the forum provision exclusive."); *Agile Assur. Group, Ltd. v. Palmer, supra*.

In *America Online, Inc. v. Booker*, 781 So. 2d 423 (Fla. 3d DCA 2001), the court expressly stated that "Courts have recognized that forum selection clauses enhance contractual and economic predictability, while conserving judicial resources and benefitting commercial entities as well as consumers." *Id.* at 424-35 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594, 111 S. Ct. 1522, 1123 L.Ed.2d 622 (1991)). The Third DCA specifically held that "Florida courts are *directed* to give effect to agreements on forum selection in order to 'recognize the legitimate expectations of the contracting parties'" to promote these public policy goals. *Id.* at 425 (emphasis added); *see also Espresso Disposition Corp. 1 v. Santana Sales & Marketing Group, Inc.*, 105 So.3d 592, 595 (Fla. 3rd DCA 2013)("Further, '[a]s we have said on a number of occasions, if a forum selection clause 'unambiguously' mandates that litigation be subject to an agreed upon

forum, then it is reversible error for the trial court to ignore the clause.'"); *Russomano v. Maresca*, 220 So.3d 1269, 1270 (Fla. 4th DCA 2017)(holding that forum selection clause requiring that any legal proceedings "shall be brought in Lee County or the United States District Court, Southern District of Florida" is unambiguous and enforceable.); *Sonus-USA, Inc. v. Thomas W. Lyons, Inc.*, 966 So.2d 992 (Fla. 5th DCA 2007)(Court reverses trial court's decision and enforces mandatory forum selection clause in favor of Minnesota.); *Manrique v. Fabbri*, 293 So. 2d 437, 439 (Fla. 1986)(holding that forum selection clauses "provide a degree of certainty to business contracts by obviating jurisdictional struggles and by allowing parties to tailor the dispute resolution mechanism to their particular situation."); *Gold Crown Resort Marketing Inc. v. Phillpotts*, 272 So.3d 789, 792 (Fla. 5th DCA 2019)(Court reversed a lower court order denying defendant's motion to dismiss for improper venue based on a mandatory forum selection clause stating that the agreements at issue were subject to the "exclusive jurisdiction" of California.); *Baker v. Economic Research Services, Inc.*, 242 So.3d 450, 452 (Fla. 1st DCA 2018)(Court enforces forum clauses stating that the parties "'irrevocably and unconditionally' consent to submit to Delaware jurisdiction for 'any' actions, suits, proceedings, or litigation arising out of or relating to the agreements."); *Allstate Fire and Cas. Ins. Co. v. Hradecky*, 208 So.3d 184, 187 (Fla. 3rd DCA 2016)(Court enforces clause "[b]ecause the clause at issue specifically provides that litigation 'shall be brought, heard, and decided' in a specified forum . . . , we find that the clause is mandatory.").

Here, the parties to the First Specialty excess insurance contract not only agreed to New York as the exclusive forum, but expressly waived the right to challenge that forum. As such, Plaintiff is fully bound by that mandatory and unambiguous provision, so the contract requirement in favor of the Courts of the State of New York should be enforced.

      **iv.**     <u>**New York enforces forum selection clauses as well.**</u>

New York enforces forum selection clauses, as its courts "have repeatedly found forum selection clauses mandatory if they provide that a specified forum 'shall' hear a matter or that the forum is 'exclusive.'" *Walker, Truesdell, Roth & Associates v. Globeop Financial Services, LLC*, 43 Misc.3d 1230(A), 2013 N.Y. Slip Op. 52318(U), *5 (Sup. Ct., N.Y. Cnty. May 27, 2013); *see also Spirits of St. Louis Basketball Club, L.P. v. Denver Nuggets, Inc.*, 84 A.D.3d 454, 455-56 (1st Dep't 2011). A New York court would therefore also enforce First Specialty's forum selection clause.

**V.**    <u>**Conclusion**</u>

WHEREFORE, Defendant, First Specialty Insurance Corporation, respectfully requests that the Plaintiff's Amended Complaint [DE 18] be dismissed with prejudice, and for all other relief that this Court deems just and proper.

                    Respectfully submitted,

                    BUTLER WEIHMULLER KATZ CRAIG LLP

                    /s/ Christopher M. Ramey
                    CHRISTOPHER M. RAMEY, ESQ.
                    Florida Bar No.: 0044808
                    cramey@butler.legal
                    JUSTIN W. SBLANO, ESQ.
                    Florida Bar No.: 1008138
                    jsblano@butler.legal
                    400 N. Ashley Drive, Suite 2300
                    Tampa, Florida 33602
                    Secondary:    hkerr@butler.legal
                                     pwilliams@butler.legal
                    Tel.: (813) 281-1900
                    Fax: (813) 281-1100
                    *Attorneys for Defendant,*
                    *First Specialty Insurance Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and that the foregoing document is being served this day on all counsel of record.

/s/ Christopher M. Ramey
CHRISTOPHER M. RAMEY, ESQ.