# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO.: 21-22911-CIV-SCOLA/GOODMAN

BURLEIGH HOUSE CONDOMINIUM,
INC.,

      Plaintiff,

v.

ROCKHILL INSURANCE COMPANY and
LIBERTY SURPLUS INSURANCE
CORPORATION,

      Defendants.

_____/

## ORDER ON PLAINTIFF'S MOTION TO STRIKE
## CERTAIN AFFIRMATIVE DEFENSES OF DEFENDANT
## <u>LIBERTY SURPLUS INSURANCE CORPORATION</u>

In this first party breach of insurance contract lawsuit filed by a condominium

association against two insurance carriers for damages it allegedly sustained from

Hurricane Irma, United States District Judge Robert N. Scola, Jr. referred [ECF No. 84][1]

to the Undersigned Plaintiff Burleigh House Condominium, Inc.'s Motion to Strike

Affirmative Defenses. [ECF No. 83]. The motion seeks to strike Defendant Liberty Surplus

---

[1]     Judge Scola's referral Order specifically requires the Undersigned's ruling to be "consistent with" 28 U.S.C. § 636(b)(1)(A) and Rule 1(c) of the Local Magistrate Judge Rules, both of which apply to non-dispositive motions. This, in turn, means that the Undersigned needs to use an Order, rather than a Report and Recommendations, (which would be for dispositive matters).

Insurance Corporation's affirmative defenses 1-5 and 14. It also asks for an Order permitting it to file a Reply to Liberty's Answer and Affirmative Defenses.

Liberty filed an opposition response [ECF No. 94], and the time in which Burleigh House had to file a reply has passed without the submission of a reply.

The Undersigned **denies in substantial part** the motion because Burleigh House did not comply with Local Rule 7.1 but its motion incorrectly represents that it did. The Undersigned **grants** the portion of the motion which seeks leave to file a reply because that request for relief is unopposed.

## I.    Background

Burleigh House's Third Amended Complaint [ECF No. 80] alleges that Defendants Rockhill Insurance Company and Liberty issued commercial property insurance policies covering real property on Miami Beach, Florida. Under something termed the Skinner III program which includes other properties as well, Rockhill is liable for the first $10 million in claims and Liberty's liability is activated after Rockhill pays out its total responsibility. Once that happens, Liberty's responsibility is on amounts from $10 million to $25 million in claims from all participants in the Skinner III program.

Burleigh House alleges its belief that Rockhill has paid out approximately $2.5 million in claims under the program, which means it has a remaining liability of approximately $7.5 million. Plaintiff further explains that it does not know how many

claims remain open under the program but notes that it alleges at least another $7.7 million is owed to it, which is why it named Liberty as a codefendant.

Burleigh House alleges a covered loss from Hurricane Irma (on or about September 10, 2017). It further alleges that Defendants have taken the positions that not all of the claimed losses are covered and that the amount of damages falls below the Rockhill policy deductible. Therefore, Plaintiff concludes, Defendants have failed to pay the covered losses and have breached the insurance policy contracts.

The Undersigned quotes Liberty's affirmative defenses at issue in verbatim fashion:

**First Affirmative Defense**

Plaintiff's Third Amended Complaint fails to state a claim against Liberty upon which relief can be granted. *See, Privilege Underwriters Reciprocal Exch. v. Hanover Ins. Grp.,* 304 F. Supp. 3d 1300, 1308 (S.D. Fla. 2018). Specifically, the Policy is an excess insurance policy, and Plaintiff has not alleged that the primary policy issued by Rockhill Insurance Company has been exhausted. As such, Liberty's liability to Plaintiff only attaches after an exhaustion of the coverage limits under the Rockhill primary policy, which has policy limit (sic) of $10,000,000. Thus, no case or controversy exists against Liberty, an excess carrier, when excess coverage is contingent on exhaustion of the underlying coverage and the underlying coverage has not been exhausted.

**Second Affirmative Defense**

Plaintiff's claims are barred to the extent Plaintiff has failed to satisfy any obligations, covenants, and conditions precedent and subsequent required under the Policy.

3

### Third Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the terms, conditions, agreements, exclusions, definitions, limitations, and/or endorsements contained in the Policy.

### Fourth Affirmative Defense

In the event it is determined that coverage exists for any part of Plaintiff's claim under the Policy, recovery is limited by all deductibles, limits, and sub-limits contained therein.

### Fifth Affirmative Defense

Plaintiff's claims are barred to the extent that Plaintiff has failed to mitigate its damages.

***

### Fourteenth Affirmative Defense

Plaintiff's claims are barred to the extent that Plaintiff intentionally concealed or misrepresented material facts relating to the claimed damage. Specifically, the Policy states, *inter alia*:

* * *

#### 44. Concealment, Misrepresentation or Fraud

This policy is void in any case of fraud by the Named Insured as it related to this policy at any time. It is also void if the Named Insured or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:

* * *

d) a claim made under this policy.

* * *

4

*See Coverage Form, MPP 11 16 at pp. 31 of 44.*

Plaintiff's intentionally (sic) concealment or misrepresentation of material facts relating to the Claim, has relieved Liberty of any liability under the Policy.

[ECF No. 81].

Plaintiff argues that Liberty's first defense (that it failed to state a claim) is incorrect because the Third Amended Complaint explains how and when Liberty's responsibility will arise and alleges that the damages will exceed the threshold amount for Liberty's coverage.

Plaintiff challenges the second affirmative defense (of not meeting a condition precedent) is inadequate because if fails to state with particularity the condition precedent at issue.

According to Plaintiff, the third affirmative defense should be stricken because it does not give adequate notice of *which* policy provisions bar the claims. Alternatively, Plaintiff contends that the defense is redundant because Liberty's sixth through fourteenth affirmative defenses actually point out which policy exclusions Liberty believes bar recovery.

Plaintiff says the fourth affirmative defense is insufficient and redundant. First, it does not state with particularity which deductible, limit or sub-limit applies to the claim and therefore fails to place Plaintiff on notice. In addition, Plaintiff argues that Liberty's

fifteen through nineteenth affirmative defense lists the provisions at issue, which makes the fourth affirmative defense repetitive and unnecessary.

Plaintiff argues that the fifth affirmative defense (failure to mitigate damages) is a legal conclusion, not an affirmative defense. It further contends that Liberty failed to put forth the facts which would put it on notice of what damages it failed to mitigate. Plaintiff also argues that the defense is defective for not alleging any policy provisions requiring it to mitigate damages.

Finally, Plaintiff argues that Liberty's fourteenth defense is inadequate because it is a fraud-based defense but did not state with particularity the specifics of the supposed fraud.

Liberty disagrees with all of Plaintiff's substantive arguments. But it also contends that the motion to strike should be denied because of the Local Rule 7.1 violation.

In its motion to strike, Burleigh House unequivocally represents that its counsel did in fact confer with defense counsel but they could not reach an agreement about the issues raised in the motion. [ECF No. 83, p. 5]. But Liberty's opposition response represents that Plaintiff's counsel failed to confer. In fact, according to Defendant, Plaintiff's counsel merely announced his plan to file such a motion and never discussed the merits of the parties' positions before filing the motion. [ECF No. 94, pp. 3, 12-14].

Burleigh House chose to not file an optional Reply, so it did not voluntarily submit anything concerning the factual dispute over the compliance issue.

Because both sides cannot be correct, the Undersigned required the involved attorneys to submit affidavits or declarations concerning the compliance (or non-compliance) with Local Rule 7.1. [ECF No. 96].

Plaintiff's counsel submitted what he designated as an "Affidavit" (even though it is a declaration). [ECF No. 97]. In the declaration (which he said he signed under "Florida Statute 92.525", even though we are in a federal court and 28 U.S.C. § 1746 is the applicable federal statute for an unsworn declaration subject to penalty of perjury), he admitted to not complying with the Local Rule and attributed the misrepresentation about the conferral to a "careless and lazy mistake." He said, "the fact and circumstances are not great and is not an excuse for my actions." He apologized and said the incorrect certificate of conferral was "not made to mislead, but was down [sic] out of laziness on my part."

According to the motion, Liberty has agreed to Plaintiff's motion for an order allowing it to file a Reply to Affirmative Defenses. [ECF No. 83, p. 5]. Given the lack of opposition, the Undersigned **grants this portion of the motion**. If Plaintiff wishes to file a Reply,[2] then it must do so within ten (10) calendar days from the date of this Order.

---

[2]      Judge Scola entered an Order [ECF No. 87] authorizing Plaintiff to file a Reply to the affirmative defenses raised by *Codefendant* Rockhill, and Plaintiff filed the requested Reply. [ECF No. 95].

II.      **Legal Standard**

The Court, either on its own or on a motion made by a party, is permitted to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f)(1)-(2). "Courts 'have broad discretion when considering a motion to strike,' however, 'striking defenses from a pleading' remains a 'drastic remedy to be resorted to only when required for the purposes of justice' and only when the stricken material has 'no possible relation to the controversy.'" *FAST SRL v. Direct Connection Travel, LLC*, 330 F.R.D. 315, 317 (S.D. Fla. 2018) (quoting *Guarantee Ins. Co. v. Brand Mgmt. Serv., Inc.*, No. 12-61670, 2013 WL 4496510, at *2 (S.D. Fla. Aug. 22, 2013)).

There is presently a split in this District about whether the higher pleading standards of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) apply to affirmative defenses. Compare *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 649-50 (S.D. Fla. 2015) (applying heightened pleading standard) with *Brito v. Palm Springs Mile Assocs., Ltd.*, No. 20-24701-CIV, 2021 WL 2634863, at *1 (S.D. Fla. Feb. 3, 2021) (Scola, J.) ("Affirmative defenses are not held to the same pleading standard as claims for relief.").

The Undersigned agrees with the reasoning of those cases applying a lower pleading standard to affirmative defenses. *See, e.g., Northrop & Johnson Holding Co., Inc. v. Leahy*, No. 16-CV-63008, 2017 WL 5632041, at *2 (S.D. Fla. Nov. 22, 2017) (discussing

8

difference between the language of Fed. R. Civ. P. 8(a) and (b)). More specifically, the Undersigned finds the reasoning in *Ramnarine v. CP RE Holdco 2009-1, LLC*, to be persuasive:

> [T]he Eleventh Circuit has stressed providing notice as the purpose of Rule 8(c): '[t]he purpose of Rule 8(c) is simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate it.'" *Jackson v. City of Centreville*, 269 F.R.D. 661, 662 (N.D. Ala. 2010) (quoting *Hassan v. USPS*, 842 F.2d 260, 263 (11th Cir. 1988)). Furthermore, "when one considers that a defendant must answer the complaint within 21 days, imposing a different standard for defenses is not unfair." *Floyd v. SunTrust Banks, Inc.*, 2011 WL 2441744, *8 (N.D. Ga. June 13, 2011). Therefore, so long as Defendants' affirmative defenses give Plaintiffs notice of the claims Defendants will litigate, the defenses will be appropriately pled under Rules 8(b) and (c).

No. 12-61716-CIV, 2013 WL 1788503, at *1 (S.D. Fla. Apr. 26, 2013) (Rosenbaum, J.) (emphasis added).

Accordingly, the Undersigned will apply the lower pleading standard of Rule 8(b) to Defendants' affirmative defenses, focus on notice as the primary purpose and factor in the rule that motions to strike seek drastic remedies and are disfavored.

Nevertheless, even under this standard, "'an affirmative defense must be stricken when the defense is comprised of no more than 'bare-bones, conclusory allegations' or is 'insufficient as a matter of law.'" *Northrop*, 2017 WL 5632041, at *3 (quoting *Adams*, 294 F.R.D. at 671 and *Home Mgmt. Sols., Inc. v. Prescient, Inc.*, No. 07-20608-CIV, 2007 WL 2412834, at *2 (S.D. Fla. Aug. 21, 2007)). "A defense is insufficient as a matter of law only if: (1) on the face of the pleadings, it is patently frivolous, or (2) it is clearly invalid as a

matter of law." *Microsoft Corp. v. Jesse's Computers & Repair, Inc.*, 211 F.R.D. 681, 683 (M.D. Fla. 2002).

However, the pleading standard for affirmative defenses alleging fraud must comply with Federal Rule of Civil Procedure 9(b), which provides that "[i]n alleging **fraud** or mistake, a party must **state with particularity** the circumstances constituting fraud or mistake." (emphasis added). "There is nothing in the language of [Federal Rule of Civil Procedure] 9(b) which would exempt affirmative defenses from the particularity requirement." *Chetu, Inc. v. Salihu*, No. 09-60588-CIV, 2009 WL 3448205, at *4 (S.D. Fla. Oct. 26, 2009); *see also Matrix Aviation, Inc. v. Endurance Assurance Corp.*, No. 1:19-cv-20929, 2019 WL 7945210, at *2 (S.D. Fla. May 22, 2019) (citing *Chetu*); *Pirgmann v. Wood*, No. 13-61856, 2014 WL 12860948, at *3 (S.D. Fla. Feb. 7, 2014) (same).

To the extent that an affirmative defense is actually a simple denial, however, "the appropriate course of action is for a court simply to treat the alleged affirmative defense as a denial and not to strike it." *V/G Inv., Inc. v. M/V Pacific II*, No. 12–20543–CIV, 2012 WL 3064097, *4 (S.D. Fla. July 27, 2012); *Wyne v. Carnival Corp*. No. 22-21638-Civ, 2022 WL 6127876, at *2 (S.D. Fla. Oct. 7, 2022) ("[T]he appropriate remedy is not to strike the [] affirmative defense, but to treat it as a specific denial.); *see also Bruce v. Ocwen Loan Servicing, LLC*, No. 8:12–cv–1561–T–24 MAP, 2012 WL 4867224, *2 (M.D. Fla. Oct. 15, 2012) ("While these defenses appear to be denials of Plaintiff's claims, rather than true affirmative defenses, the Court finds that there is no prejudice to Plaintiff by allowing

them to remain."); *Zeron v. C & C Drywall Corp., Inc.*, Case No. 09–60861–CIV-Cohn, 2009

WL 2461771, *2 (S.D. Fla. Aug. 10, 2009) ("[W]hen a party incorrectly labels a negative

averment as an affirmative defense rather than as a specific denial, the proper remedy is

not to strike the claim, but rather to treat it as a specific denial." (internal quotations

omitted) (cleaned up)).

Local Rule 7.1(a)(3) requires attorneys to attempt in good faith to confer with

opposing counsel before filing a motion. The Local Rule specifies:

> *Pre-filing Conferences Required of Counsel.* Prior to filing any motion in a civil
> case, except a motion for injunctive relief, for judgment on the pleadings,
> for summary judgment, to dismiss or to permit maintenance of a class
> action, to dismiss for failure to state a claim upon which relief can be
> granted, for pro hac vice admission, or to involuntarily dismiss an action,
> for garnishment or other relief under Federal Rule of Civil Procedure 64, or
> otherwise properly filed ex parte under the Federal Rules of Civil Procedure
> and these Local Rules, or a petition to enforce or vacate an arbitration
> award, counsel for the movant shall confer (orally or in writing), or make
> reasonable effort to confer (orally or in writing), with all parties or non-
> parties who may be affected by the relief sought in the motion in a good
> faith effort to resolve by agreement the issues to be raised in the motion.
> Counsel conferring with movant's counsel shall cooperate and act in good
> faith in attempting to resolve the dispute. At the end of the motion, and
> above the signature block, counsel for the moving party shall certify either:
> (A) that counsel for the movant has conferred with all parties or non-parties
> who may be affected by the relief sought in the motion in a good faith effort
> to resolve the issues raised in the motion and has been unable to do so; or
> (B) that counsel for the movant has made reasonable efforts to confer with
> all parties or non-parties who may be affected by the relief sought in the
> motion, which efforts shall be identified with specificity in the statement
> (including the date, time, and manner of each effort), but has been unable
> to do so. If certain of the issues have been resolved by agreement, the
> certification shall specify the issues so resolved and the issues remaining
> unresolved. Failure to comply with the requirements of this Local Rule may
> be cause for the Court to grant or deny the motion and impose on counsel

> an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

S.D. Fla. L. R. 7.1(a)(3).

## III.   Analysis/Ruling

Local Rule 7.1 applies to Plaintiff's Motion to Strike. *See Flexiteek Ams., Inc. v. Nuteak Decking, Inc.*, 08-60995-CIV, 2009 WL 10664821, at *2 (S.D. Fla. July 10, 2009) (considering a motion to strike affirmative defenses and explaining that "[t]he Court directs the parties to Local Rule 7.1(A)(3), which requires a moving party to confer with opposing counsel prior to filing a motion to strike"); *Noveshen v. Bridgewater Assocs.*, 13-CV-61535-KAM, 2016 WL 3902580, at *1 (S.D. Fla. Feb. 25, 2016) ("[The plaintiff's] Motion to Strike Defendant's Affirmative Defenses is also procedurally improper because he did not certify that he conferred with [the defendant's] counsel prior to filing the motion as required under Local Rule 7.1(a)(3).").

When, as is the case here, the movant's counsel fails to comply with the requirements of this Local Rule, the Court may deny the motion and impose on counsel an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including reasonable attorney's fees. *Garayoa v. Miami-Dade Cnty.*, No. 16-Civ-20213, 2017 WL 2880094, at *6 (S.D. Fla. July 6, 2017); *see also Coconut Key Homeowners Ass'n v. Lexington Inc. Co.*, 649 F. Supp. 2d 1363, 1372 n.3 (S.D. Fla. 2009) (stating that in addition to the plaintiff's motion not being supported by

12

legal authority, the motion could have been "denied because [the] [p]laintiff failed to comply with Local Rule 7.1(A)(3) that required [the] [p]laintiff's counsel to confer with [the] [d]efendant's counsel before filing this [m]otion. This is a critical Rule that promotes efficient litigation. Had it been followed here, both the [d]efendant and the Court may have been spared from taking the time to respond to a motion that has no obvious legal support.").

As reflected in Plaintiff's counsel's declaration, there is no factual dispute about the conferral: it did not occur and he mistakenly (and, according to him, "lazily") misrepresented that it did. This justifies an Order denying the motion, as the Eleventh Circuit has affirmed that failure to comply with Local Rule conferral requirements is an independently sufficient basis to deny a motion. *See J.B. Hunt Transp., Inc. v. S & D Transp., Inc.*, 589 F. App'x 930, 933 (11th Cir. 2014); *see also United States v. Twenty-Nine Pre-Columbian & Colonial Artifacts from Peru*, 13-21697-CIV, 2014 WL 4655737, at *3 n.4 (S.D. Fla. Sept. 17, 2014) (denying the plaintiff's motion for failing to contact and confer with opposing counsel prior to filing the motion, and noting that the plaintiff "should have been sensitized to the need to have a Local Rule 7.1 conferral . . . because the Court had previously struck an earlier motion . . . for failing to confer and failing to file a certificate of conferral"); *Gomez v. 1131 Kent, LLC*, No. 18-24133, 2019 WL 498745 (S.D. Fla. Feb. 8, 2019) (denying motion for violating Local Rule 7.1's pre-filing conferral requirement). *Cf. Royal Bahamian Ass'n. v. QBE Ins. Corp.*, 744 F. Supp. 2d 1297, 1303 (S.D. Fla. 2010)

(ordering attorneys who violated Local Rule 7.1(a)(3) to pay fines to compensate opposing attorneys for having to address the violating motion, and to discourage future violations of the rule).

In his declaration, Plaintiff's counsel argues that "[g]iven Liberty's response to my motion, it is unlikely we could have come to an agreement," but then concedes that this "is not an excuse for not making a good faith effort." Counsel who fail to comply with local rules imposing conferral requirements often defend efforts to impose consequences for the violation by saying the required conferral would not have produced any results anyway. But, "[u]nfortunately for Plaintiff's counsel, "there is no exception in the Local Rules for futility." *Norych v. Admiral Ins. Co.*, No. 08-60330-CIV-ALTONAGA, 2010 WL 2557502, at 2 (S.D. Fla. June 23, 2010) (denying motion for attorneys' fees for failure to comply with Local Rules 7.3(a)(1) and 7.3(b)).

**DONE AND ORDERED** in Chambers, in Miami, Florida, on November 18, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola
All counsel of record

14